# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX HERNANDEZ, et al., <br><br>                    Plaintiffs, <br>  vs. <br><br>STATE FARM FIRE & CASUALTY COMPANY, et al., <br><br>                    Defendants. | CASE NO. 16cv200-LAB (JLB) <br><br>**ORDER GRANTING MOTIONS TO STRIKE, AND DENYING WITHOUT PREJUDICE MOTIONS TO DISMISS** <br><br>**[DOCKET NUMBERS 38, 40, 42, 43, 47.]** |

     In their first amended complaint ("FAC"), Felix and Maria Emma Hernandez on their own behalf and on behalf of a putative class bring fraud, unfair competition, and related claims in connection with water mitigation claims under their insurance policy.

     Plaintiffs own a condominium in Santa Ana, California that was damaged by water, leaving it uninhabitable. They allege State Farm discouraged them from using any mitigation company other than ServiceMaster or Servpro, and falsely claimed that those two companies were independent. They allege they contacted ServiceMaster, whose local franchise failed to carry out the mitigation services competently, which resulted in further losses. After they complained about ServiceMaster's work, they say State Farm steered them to Servpro, whose local franchise also did a bad job.

/ / /

Plaintiffs allege that by arrangement among Defendants, insureds receive significantly less in the way of mitigation services than they have been led to expect, and that as a result Defendants profit unfairly. They also make allegations of financial harm and damage to their home and class members' homes.

Plaintiffs are bringing claims against State Farm Fire and Casualty Company ("SFFCC"); State Farm General Insurance Company ("SFGIC"); The ServiceMaster Company, LLC ("ServiceMaster"); Servpro Industries, Inc. ("Servpro"); Douglas D. Dehart, Inc. dba ServiceMaster Absolute Water and Fire Damage Service ("ServiceMaster Local"); and Servpro of Santa Ana South ("Servpro Local"). The FAC refers to SFFCC and SFGIC collectively as "State Farm". Plaintiffs are suing for breach of contract and intentional interference with contractual relations; claims against all Defendants for breach of the implied covenant of good faith and fair dealing; and claims under various California statutes against all Defendants for various unfair business practices. The FAC brought claims against several individual Defendants as well, but those were voluntarily dismissed.

Defendants' motions ask the Court to dismiss the FAC for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), to strike class claims pursuant to Fed. R. Civ. P. 12(f), and to dismiss fraud claims that are not pled to the standard required by Fed. R. Civ. P. 9(b).

**Jurisdiction**

Jurisdiction has been a question in this case from the start. When the Court issued an order requiring Plaintiffs to show cause regarding jurisdiction, it was not only the Plaintiffs who responded. Two Defendants also spontaneously filed briefs (Docket nos. 8 and 9) conceding that the Court had subject matter jurisdiction under the Class Action Fairness Act (CAFA). Of course, subject matter jurisdiction can never be waived, even by consent, and the Court is obligated to raise the issue *sua sponte* even if the parties concede it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The Supreme Court has made clear that presumption must be presumed to be lacking, until it is affirmatively shown. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Furthermore, the Court *must* confirm its jurisdiction before proceeding to the merits, even if the jurisdiction is complex and

the merits question is relatively straightforward. *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 94 (1998). If jurisdiction is lacking, the Court must announce that fact and dismiss. *Id*.

If the Court has jurisdiction at all, it must be under CAFA. Neither the original complaint nor the FAC raises a federal question, and no basis for a federal claim is apparent. Ordinary diversity jurisdiction is unavailable because the parties are not completely diverse. Plaintiffs are California citizens, as are at least two Defendant, Douglas D. DeHart, Inc. and Servpro Santa Ana South.[1] But other Defendants are non-California citizens. Because CAFA only requires minimal diversity — i.e., one plaintiff and one defendant who are citizens of different states — this requirement is satisfied. *See* 28 U.S.C. § 1332(d)(2)(C). Because facts to satisfy other requirements are properly alleged, the Court can exercise CAFA jurisdiction.

In their motions to dismiss, Defendants are asking the Court to strike class action allegations. Doing so would deprive the Court of jurisdiction to reach the merits. The Court will therefore address requests to strike before requests for dismissal.

The multiple sets of briefing have thoroughly covered most of the important issues. Of course, the Court must address any jurisdictional defects, even if not raised. This is particularly important here, where Defendants challenge the putative class members' standing. It is also relevant with regard to Plaintiffs' and the class's standing to seek injunctive relief.

/ / /

/ / /

---

[1] The citizenship of The ServiceMaster Company, LLC is not completely alleged. The only allegations concern where it and its sole member — another LLC — have their principal places of business and under which states' laws they are organized. For an LLC, that does not establish citizenship for purposes of ordinary diversity jurisdiction. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Under CAFA, however, an LLC is deemed to be a citizen both of the state where it has its principal place of business as well as the state under whose laws it is organized. § 1332(d)(10). But the FAC fails to allege this company's principal place of business. All it alleges are that the company is organized under Delaware law (making it a citizen of Delaware), and facts about the LLC that owns it. (FAC, ¶ 37.) For CAFA purposes, citizenship of an LLC's owner does not determine citizenship, however.

**Legal Standards**

Under Fed. R. Civ. P. 12(f), the Court can strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter," either *sua sponte* or in response to a motion. In general, the appropriateness of proceeding as a class action is not tested at the pleading stage, but there is no rule preventing this. As the Supreme Court has explained, most of the time determining whether a case can proceed as a class action involves deciding factual and legal questions that are closely tied up with the cause of action itself. *Gen'l Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). In their opposition, Plaintiffs rely on the fact that a motion to strike *usually* is an inappropriate way to test class claims.

That being said, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Id*. *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (construing *Falcon* as holding that it may sometimes be necessary to look beyond the pleadings to determine whether class treatment was appropriate). When it is clear from the complaint that class actions cannot be maintained, the Court may grant a motion to strike them. *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009). This Court, too, has treated motions to strike as an appropriate means of testing class claims. *Kim v. Shellpoint Partners, LLC*, 2016 WL 1241541 (S.D. Cal. Mar. 30, 2016) (citing *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 888 (N.D. Cal., 2012)).

The parties have cited both state and federal decisional law. Plaintiffs' claims arise under state law, and state substantive law governs them. But procedural aspects of class actions in federal court are governed by Fed. R. Civ. P. 23, *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), and the Court first looks to federal law to resolve those issues. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The briefing focuses on Rule 23(a)(2)'s commonality requirement, 23(b)(1)'s superiority requirement, and 23(b)(3)'s predominance requirement. The claims must depend upon a common contention of such a nature that it is capable of classwide resolution. *Wal-Mart*, 564 U.S. at 350.

At the pleading stage, the Court may consider not only the complaint itself, but also documents it refers to, whose authenticity is not questioned, and matters judicially noticed. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). Plaintiffs bear the burden of pleading, and ultimately demonstrating, compliance with Rule 23's requirements. *Zinser*, 253 F.3d at 1186.

**Discussion**

At the outset, it should be noted that recent Ninth Circuit authority probably rules out the possibility of this being a Rule 23(b)(2) class, or of a prospective injunction providing meaningful relief to the class. *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071 (9th Cir. 2017), a Fair Debt Collection Practices Act case, dealt with an injunction forbidding the defendant from placing improper debt collection phone calls to class members in the future. The class was defined as those who had received such calls in the past, not those likely to receive them in the future. *Id*. at 1079. Even without an injunction, the chance of a class member receiving a debt collection call from the defendant in the future was slim. *Id*. at 1079–80. Similarly, the likelihood of class members in this case experiencing water damage in their homes and suffering the same kind of injury again is slim. And the likelihood that most of the class would have the same experience again, *see id*. at 1080, is infinitesimal. Assuming this case goes forward as a class action, it almost certainly must go forward as a damages class action.

The FAC defines the class to include "All State Farm policyholders in California who, on or after January 1, 2005, made water loss claims, participated in State Farm's PSP Program[,] and had water mitigation services provided by a ServiceMaster and/or Servpro franchisee." (FAC, ¶ 76.)

Defendants individually raise various problems with maintaining this case as a class action, and Plaintiffs' opposition briefs respond. Because there is a good deal of overlap, and joinder in one another's motions, this order will address the gravamen of the arguments, particularly those with jurisdictional aspects, rather than discussing each set of briefing seriatim.

Defendants point out problems with pleading injury by class members. Namely, even if Defendants did everything the FAC alleges they did, class members may still not have suffered compensable injuries. According to the FAC, insureds are kept unaware of the relationship between State Farm and the other Defendants, and are not told about conflicts of interest or secret understandings among Defendants. The effect of these understandings is that State Farm controls the amount of repair work done, and caps the price. (FAC, ¶ 7.) But the FAC does not allege that State Farm's limits on the scope of mitigation and amount it would pay are or were so low that they were inadequate as to the entire class. This is particularly true of class members with relatively light, limited water damage; or damage that for some other reason was easier or less expensive to mitigate.

This leaves open the distinct possibility that many, perhaps most, class members were provided with satisfactory mitigation services. Insureds who were satisfied with the work done on their homes had no reason either to demand that the work be done to a higher standard, or to attempt to make a claim under the 5-year warranty afterwards. Furthermore, for those whose homes underwent mitigation more than five years before the suit was filed, the warranty has already expired, so those class members cannot pursue warranty remedies at this point even if they are dissatisfied with the quality of the work. Even if, as Plaintiffs allege, the warranties were illusory, they have not lost anything. Such class members were not injured, and lack standing to sue. This, by itself, would prevent the case from proceeding as a class action. *See Sanders*, 672 F. Supp. 2d at 991 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)) ("[N]o class may be certified that contains members lacking Article III standing . . . The class must therefore be defined in such a way that anyone within it would have standing.")

Another problem is that ServiceMaster Local and Servpro Local are not the only franchises or subsidiaries of their respective parent companies in California.[2] (FAC, ¶ 37.) They do not service the entire state, and not all class members do business with either of

---

[2] ServiceMaster represents in its briefing that there are "scores of independently owned and operated franchisees across California . . . ." (Docket no. 43-1, 2:25–3:1, 20:12–15.)

them. (*Id.*, ¶¶ 42, 49.) The FAC does not name other local franchisees or subsidiaries who provided service at the request of ServiceMaster or Servpro. And even if it did, it is unlikely Plaintiffs could allege that all local franchisees uniformly applied company policy and provided similarly defective service so as to cause comparable damage to all class members.

For example, ServiceMaster Local and Servpro Local are alleged damaged Plaintiffs' house and belongings (FAC, ¶ 72(l)), covered up mold contamination (*id.*, ¶ 72(l)), caused widespread mold contamination (*id.*, ¶ 72(n)), and provided services negligently. (*Id.*, ¶ 72(s).) The FAC doesn't allege that this arose from some uniform policy or practice, or that class members suffered the same damage or even the same kind of damage. And it isn't likely Plaintiffs can allege that every franchise or subsidiary in the state did the same to class members. Even if some of the claims arose out of ServiceMaster's and Servpro's policies that franchisees were required to follow, it isn't alleged how much arose as a result of uniform statewide policy as opposed to the local franchisees' own deliberate and negligent actions. (*See id.*, ¶ 53(c); ¶ 64–65, ¶ 68–72.) In this sense, Plaintiffs' claims differ from the putative class's claims, and the nature of class members' claims varies from one member to the next, which tends to undermine commonality.

The briefing appears to assume Plaintiffs can represent class members who are bringing similar claims against different local franchisees not named as parties. But this cannot be. Class members cannot recover against non-Defendants, and they cannot recover from a Defendant they never did business with. And Plaintiffs can only represent class members who are suing either ServiceMaster Local or Servpro Local, not those who are seeking to recover from some franchisee Plaintiffs never did business with. *See Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. 541, 543 (D. Nev. 2004) ("[A]t least one named plaintiff must have standing in his own right to assert a claim against each named defendant before he may purport to represent a class claim against that defendant."). So, to the extent class members have claims against other franchisees, their claims are not amenable to resolution by class action. In order for a class action to go forward, Plaintiffs would have to

either name a multitude of new class representatives, or abandon those claims. Alternatively, Plaintiffs would have to abandon all claims against any franchisee. Abandonment of meritorious class claims for the sake of maintaining a class action undercuts the rationale for allowing class actions in the first place, and bespeaks inadequate representation. The Court therefore concludes that standing is a serious problem that likely prevents this case from being litigated as a class action.

For a large number of class members — perhaps most — causation is also a problem. Even if they were lied to and sold worthless warranties, class members who were satisfied with the water mitigation services they were provided suffered no loss. Those who suffered damages that were less than State Farm's alleged secret cap also presumably received all they were all entitled to. And, as noted, others cannot sue ServiceMaster Local or Servpro Local, because neither of these local franchisees provided them with water mitigation services. Plaintiffs cannot serve as representatives for class members whose water mitigation services were provided by some other local franchisee.

Defendants argue commonality is so lacking that this action cannot be maintained as a class action. They also argue that a class action is not a superior method of adjudicating these claims. To a great extent, their arguments focus on the extensive fact-finding that would be necessary in order to determine whether each class member has a valid claim.

State Farm cites portions of insurance policies,[3] pointing out that claims arising from failure to provide insurance coverage involves subsidiary issues. The class definition weeds out insureds whose claims were not covered or who did not make claims. But it does not weed out those whose claims were properly denied or limited because they either failed to protect their property from further damage by making reasonable and necessary temporary repairs. (Docket no. 40-2, Ex. 5 (Policy) at 99.)  It does not seem likely these

///

---

[3] State Farm asks the Court to take judicial notice of Plaintiffs' policy (Docket no. 40-2). At this stage, the Court need not formally notice the policy, because the FAC refers to it and relies on it, and because its authenticity is not questioned. *See Zucco*, 552 F.3d at 990. In fact, Plaintiffs' opposition to State Farm's motion cites State Farm's request for judicial notice. (Docket 58 at 1 n.1.)

class members are very numerous, but the possibility that some of class members fall into this category adds some force to Defendants' argument.

Defendants also point out that, to succeed on a claim, class members must each show that Defendants made misleading representations to them, that they relied on them, and that the mitigation services they received were inadequate and less than they were entitled to. With regard to the reliance problems, Plaintiffs have minimized some of these problems, by alleging that State Farm uses a standardized script when insureds call, and use standardized contracts and form letters. *See McPhail v. First Command Fin'l Planning, Inc.*, 247 F.R.D. 598, 614 (S.D. Cal. 2007) (citing authority for principle that plaintiffs can establish a presumption of reliance by showing a defendant used a sufficiently uniform marketing script). But causation remains a problem, as discussed above. Defendants correctly point out that "both fraud and warranty claims are difficult to maintain on a nationwide basis . . . ." *Sanders*, 672 F. Supp. 2d 991 (citing authority). While this does not show a class cannot be certified, it does suggest that Plaintiffs' attempts to maintain this case as a class action are not likely to succeed. Should they fail, this case will be dismissed for lack of jurisdiction.

Finally, as a practical matter, it is difficult to say why proceeding as a class action is superior to individual actions. For those insureds who truly believe they were injured in ways the FAC alleges, the value of a lawsuit is likely to be high. It is very likely they could and would bring claims on their own behalf. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (explaining that, while "cases in which individual damages run high" can still be certified as class actions, the policy behind allowing class actions is intended primarily to allow plaintiffs with relatively small recoveries to aggregate their losses); *Compare Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010) (class action was a superior method of litigation, because each class member's damages were small). In addition, damages would have to be individually adjudicated, which undermines the rationale for proceeding as a class action. *See Grundmeyer v. Allstate Property & Casualty Ins. Co.*, 2015 WL 9487928, at *3–4 (W.D. Wash., Sept. 29, 2015) (finding a class action not
/ / /

superior, because damage to members' homes was likely to be large and not uniform across the class).

**Conclusion and Order**

If this case cannot proceed as a class action, the Court has no jurisdiction. Because the class definition includes insureds who were not injured at all, or whose claims are not remediable, or who were not injured by either of the two local franchises named as Defendants, class allegations are defective. Furthermore, as to any claims against local franchisees other than the two named as Defendants, the class has no adequate representative. These problems alone would merit striking the class claims. But Defendants have made other arguments that raise serious questions about Plaintiffs' ability to maintain this case as a class action, even if Plaintiffs can get past the other obstacles.

In light of the Ninth Circuit's recent decision in *Koby*, 846 F.3d 1071, proceeding as an injunctive class action under Rule 23(b)(2) is probably not an option.

The Court will therefore **GRANT** requests to strike class claims. With class claims stricken, the Court lacks jurisdiction and the FAC must be dismissed. Because the Court lacks jurisdiction, there is no reason at this time to decide the motions to dismiss for failure to state a claim; it is not even clear whether the case will go forward in this Court. And in any event, until jurisdiction is established, the Court cannot make a ruling on the merits.

The class claims are **ORDERED STRICKEN**, and the FAC is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. If Plaintiffs believe they can successfully amend so that class claims would survive a second round of motions to strike, they should seek leave to file a second amended complaint. They may do so by filing an *ex parte* application, attaching as an exhibit the proposed SAC, within **21 calendar days of the date this order is issued**. The proposed amended SAC must remedy all the defects this order has identified. If it seeks an injunction, it should plead facts to show why the Court would have jurisdiction over such a claim, in light of *Koby*. And as to each claim, and the case as a whole, it must show that the Court has subject matter jurisdiction. Defendants may file a joint
/ / /

opposition within **10 calendar days** of the date the application is filed. Their opposition, if they file one, should focus solely on whether the case can proceed as a class action.

The motions to dismiss are **DENIED WITHOUT PREJUDICE**. If the Court is inclined to grant the application to file a second amended complaint, Defendants will be given an opportunity to raise these issues again.

If Plaintiffs do not seek leave to amend within the time permitted, this action will be dismissed without prejudice but without leave to amend, for lack of jurisdiction. If Plaintiffs decide to pursue their claims in state court, they should file a notice of dismissal or joint motion to dismiss.

**IT IS SO ORDERED**.

DATED: March 9, 2017

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge